IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| LLOYD SCOTT MAIER,<br><br>Plaintiff,<br><br>vs.<br><br>MARTIN FRINK and<br>CHRISTOPHER ROST,<br><br>Defendants. | CV 13-0092-GF-DWM-JTJ<br><br><br>FINDINGS AND RECOMMENDATIONS OF<br>UNITED STATES MAGISTRATE JUDGE |

Pending are the parties' motions for summary judgment. (Docs. 40, 49, 57.)
For the reasons stated herein, the motions should be denied.

## I. FACTUAL BACKGROUND

Mr. Maier apparently suffers from some hearing loss. In September 2014,
an audiologist said Mr. Maier had "severe sensorineural flat hearing loss" in his
right ear and "mild-severe sensorineural sloping hearing loss" in his left ear.
(Vibrant Hearing Audiologic Report, September 4, 2014, Doc. 37-2 at 3.) At all
times relevant to the Complaint, Mr. Maier had a hearing aid for his right ear.

On September 17, 2013, Mr. Maier submitted a sick call request to have his
hearing aid fixed. He complained that the hearing aid whistled and he heard
"f[e]edback." Mr. Maier indicated that the hearing aid had not worked since

September 14, 2013.  (Doc. 50-3 at 5.)  The request was referred to Nurse Larson.

The response to Mr. Maier's request indicated that unless he simply needed a filter,

the hearing aid would be mailed out of the prison for a repair.  (Doc. 50-3 at 5.)

On September 18, 2013, Mr. Maier submitted an informal grievance, again

asking for his hearing aid to be fixed.  (Doc. 41-1 at 10.)  On September 19, 2013,

he submitted a formal grievance asking for an outside interpreter.  The response to

the formal grievance was: "If you need assistance it will be provided if you ask.

CCA will not be paying for any outside agencies to interpret."[1]  (Doc. 37-1 at 4.)

On September 28, 2013, Mr. Maier submitted a formal grievance in which he said

the infirmary had taken his hearing aid to be fixed and, therefore, the issue was

moot.  (Doc. 41-1 at 14.)

According to an October 17, 2013 clinic note, Mr. Maier's hearing aid was

sent to Hearing Life in Great Falls, Montana, for repair on October 17, 2013.

(Doc. 46-2 at 12.)  Hearing Life conducted a "unilateral ITE reprogramming and

adjustment" of the hearing aid on October 24, 2013.  (Doc. 37-3.)  The hearing aid

arrived at Crossroads Correctional Center in Shelby, Montana, on October 28,

2013, and was placed on the nurses' desk to be provided to Mr. Maier.  (Clinic

---

[1] "CCA" refers to Corrections Corporation of America, the company that owns
and operates Crossroads Correctional Center in Shelby, Montana, where Mr. Maier
was incarcerated at all times relevant to his Complaint.

Note, Doc. 46-2 at 11.)

There is no evidence that Mr. Maier complained about his hearing aid again until December 5, 2013, when he submitted a sick call request, asking that the volume of his hearing aid be increased. He indicated that the volume had been a problem since he received his hearing aid in September. (Doc. 37-1 at 8.) Nurse Larson responded:

> The hearing aid volume was turned down due to your complaint of scratching noise, if you want the volume changed it can be sent back, but the scratching noise may return. Please kite and let me know what you want to do.

(Doc. 37-1 at 8.)

On December 11, 2013, Mr. Maier submitted an informal grievance. He said the infirmary could not fix his hearing aid, and he requested a working hearing aid with volume control. The request was denied because Mr. Maier previously had been instructed to inform staff if he wanted to send back his hearing aid to have the volume adjusted. (Doc. 41-1 at 15.)

In support of his motion for summary judgment, Mr. Maier submitted a formal grievance form that raised this issue and was dated December 20, 2013. He again asked that his hearing aid be fixed or that he be provided with proper hearing equipment with volume control. There is no response to that grievance. (Doc. 41-

1 at 1.)  Defendant Martin Frink disputes that this grievance was submitted to prison authorities.  (Frink Stmt of Disputed Facts, Doc. 55 at 4, ¶ 9.)

On December 22, 2013, Mr. Maier submitted another formal grievance asking for a hearing aid with volume control.  The response to the grievance states that the hearing aid could not be fixed until Mr. Maier brought it to the medical department.  (Doc. 41-1 at 12.)

On January 15, 2014, Mr. Maier submitted a grievance appeal to the Warden, again asking that they fix his hearing aid or get him a new one.  The appeal was granted with the following response from Defendant Frink: "Medical dept will look at the hearing aid very soon."  (Doc. 41-1 at 6.)  Prior to this appeal, Mr. Maier had never complained to Defendant Frink about his hearing aid.

According to a January 31, 2014 Clinic Note, Mr. Maier's hearing aid was again sent to Hearing Life.  (Clinic Note, Doc. 46-2 at 10.)  However, the subpoena response from Hearing Life indicated Hearing Life only provided services for Mr. Maier on October 24, 2013.  (Doc. 37-3.)  There is no record that Hearing Life returned the hearing aid to Crossroads.

Defendant Christopher Rost, a physician assistant, attempted to return the hearing aid to Mr. Maier on February 20, 2014, and made the following progress note:

> Patient here from SMU to have his hearing aid returned. The hearing
> aid was sent back for evaluation and we were informed it was cleaned
> and checked thoroughly and was in good working order. Patient put
> the hearing aid in his right ear and stated that he could not hear
> through it and could not hear the beeps that were supposed to signal
> when it was changing modes with pushing of the button. Inmate gave
> the hearing aid back stating "if you guys can't fix this I guess I will
> see you in court."

(Progress Note, Doc. 46-2 at 9.)

On February 20, 2014, Mr. Maier submitted an informal grievance, stating

the hearing aid worked but the volume was too low. He requested that they fix his

hearing aid or give him one with volume control. Nurse Larson responded that he

had been provided his hearing aid after it had been cleaned and checked but he

refused the hearing aid. (Doc. 37-1 at 1.) Mr. Maier wrote on the grievance form

that he did not refuse the hearing aid and that it did not work so he had asked to get

it fixed. (Doc. 37-1 at 1.)

Nurse Larson again attempted to give Mr. Maier his hearing aid on February

21, 2014, but according to Crossroads' records, he refused the hearing aid and it

was placed in the medical pharmacy. (Treatment Note, Doc. 37-1 at 10.)

On February 28, 2014, Mr. Maier filed a formal grievance in which he asked

Crossroads to find a medical provider who could give him proper hearing

equipment. The response indicated that Mr. Maier had been provided with the

proper equipment.  (Doc. 37-1 at 3.)

Mr. Maier filed a grievance appeal on March 13, 2014.  According to Defendant Frink, the appeal was directed to Montana Department of Corrections (DOC) Health Services to provide Maier with specialized treatment with an audiologist.  (Affidavit of Martin Frink, Doc. 61 at ¶ 13.)  Laura Janes, a registered nurse from DOC Health Services, responded to the appeal as a designee for the prison administration.  Nurse Janes granted Maier's appeal on April 2, 2014, stating that Maier should have a hearing examination and would be seen by an audiologist.  (Doc. 37-1 at 2.)

Mr. Maier was transferred by DOC to Montana State Prison on April 29, 2014.  (Frink Affidavit, Doc. 61 at ¶ 11.)

## II.  MOTIONS FOR SUMMARY JUDGMENT

### A.  Standard

Federal Rule of Civil Procedure 56(a) entitles a moving party to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The movant bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, that it believes

demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has satisfied its burden, the non-moving party must go beyond the pleadings and designate by affidavits, depositions, answers to interrogatories, or admissions on file "specific facts showing that there is a genuine issue for trial." *Id.* at 324. In deciding a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party and draws all justifiable inferences in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The Court must grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a) (quotation marks omitted); *Washington Mutual Inc. v. U.S.*, 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by: (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed.R.Civ.P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, although it is not required to do so. Fed.R.Civ.P.

56(c)(3); *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001); *accord Simmons v. Navajo County, Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010).

A fact is material if it might affect the outcome of the suit under the governing law. *Anderson*, 477 U.S. at 248. A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* A defendant does not bear the burden of proof at trial and in moving for summary judgment, he need only prove an absence of evidence to support the plaintiff's case. *In re Oracle Corp. Securities Litigation*, 627 F.3d 376, 387 (9th Cir. 2010) (*citing Celotex*, 477 U.S. at 323). If a defendant meets his initial burden, the burden then shifts to the plaintiff "to designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle Corp.*, 627 F.3d at 387 (*citing Celotex*, 477 U.S. at 323). This requires a plaintiff to "show more than the mere existence of a scintilla of evidence." *Id.* (*citing Anderson*, 477 U.S. at 252).

In judging the evidence at the summary judgment stage, the Court may not make credibility determinations or weigh conflicting evidence. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted). The Court must draw all inferences in the light most favorable to

-8-

the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment. *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted). The Court determines only whether there is a genuine issue for trial, and in doing so, it must liberally construe Mr. Maier's filings because he is a pro se prisoner. *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010) (quotation marks and citations omitted).

By contemporaneous notices provided July 31, 2015 (Doc. 52), and August 13, 2015 (Doc. 59), the Court advised Mr. Maier of the requirements for opposing motions brought pursuant to Rule 56 of the Federal Rules of Civil Procedure. *See Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1998) (en banc); *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988).

### B. Defendant Frink's Motion for Summary Judgment

To state a Section 1983 claim for failure to provide medical care, a prisoner must allege a defendant's "acts or omissions [were] sufficiently harmful to evidence a deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Toussaint v. McCarthy*, 801 F.2d 1080, 1111 (9th Cir. 1986). In the Ninth Circuit, the test for deliberate indifference to medical needs is two-pronged: (1) "the plaintiff must show a serious medical need by

demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain"; and (2) "the plaintiff must show the defendant's response to the need was deliberately indifferent." *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012) (quoting *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006)).

With regard to the first prong, the existence of an injury that a reasonable doctor would find important and worthy of comment or treatment, the presence of a medical condition that significantly affects an individual's daily activities, and/or the existence of chronic or substantial pain are indications of a serious medical need. *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (citation omitted).

In his motion for summary judgment, Defendant Frink did not raise "the issue of whether provision of a hearing aid under the facts present here would constitute 'serious medical need' under the first prong of the . . . analysis and would leave that issue for a jury to decide if necessary." (Doc. 58 at 7, n. 1.)

Therefore, the Court will focus its analysis on the second prong: whether there is sufficient evidence from which a trier of fact might reasonably find that Defendant Frink was deliberately indifferent to Mr. Maier's medical needs related to his hearing. This prong requires a showing of: "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the

indifference." *Wilhelm*, 680 F.3d at 1122 (quoting *Jett*, 439 F.3d at 1096). "Such indifference may be manifested in two ways. It may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *Hutchinson v. U.S.,* 838 F.2d 390, 394 (9th Cir. 1988) (citing *Estelle*, 429 U.S. at 104-05).

Deliberate indifference may also be found where the reason for the defendant's action or inaction is unrelated to the prisoner's medical needs. *Snow v. McDaniel*, 681 F.3d 978, 987 (9th Cir. 2012); *Jett*, 439 F.3d at 1097 (citation omitted). A complete denial of medical care is not required to show deliberate indifference. *Lopez*, 203 F.3d at 1132. Allegations that treatment has been requested and denied because of a difference of opinion with medical staff, absent more, are insufficient to state a claim for deliberate indifference. *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996). The requisite state of mind is one of subjective recklessness, which entails more than ordinary lack of due care. *Snow*, 681 F.3d at 985 (citation and quotation marks omitted); *Wilhelm*, 680 F.3d at 1122.

As it pertains to the allegations in Mr. Maier's Complaint, he first complained about his hearing aid on September 17, 2013. His hearing aid was sent to Hearing Life on October 17, 2013. With regard to this first incident, there is no

evidence that any Defendant was deliberately indifferent to Mr. Maier's hearing needs.

Mr. Maier again complained about his hearing aid on December 5, 2013. There is a disputed fact regarding whether Mr. Maier's hearing aid was sent to Hearing Life for repair/reprogramming after December 5, 2013. Defendant Frink was aware of Mr. Maier's hearing problems by at least January 15, 2014, when he received Mr. Maier's grievance appeal. Defendant Frink argues that Mr. Maier's hearing aid was sent out for repairs on January 31, 2014, as indicated in a January 31, 2014 clinic note. Mr. Maier, however, argues that the subpoena response from Dr. Evans at Hearing Life indicates Hearing Life only worked on the hearing aid once, on October 24, 2013. (Hearing Life records, Doc. 37-3.) Although there is a clinic note signed by Mary Devera on January 31, 2014, indicating that the hearing aid was sent to Hearing Life in Great Falls, the records from Hearing Life seem to contradict this representation.

The records submitted by Defendants indicate that Defendant Rost and a nurse attempted to return the hearing aid on February 20, 2014, representing that Dr. Evans had worked on the hearing aid. Mr. Maier allegedly refused to take the hearing aid, claiming that it did not work. There is no evidence that anything further was done to assist Mr. Maier with his hearing issues while he was at

Crossroads, but he was advised on April 2, 2014, that he was due for a hearing examination. He was transferred from Crossroads on April 24, 2014. There is no evidence that he received a hearing exam while incarcerated at Crossroads.

There is a genuine issue of disputed fact regarding whether Defendant Frink took any action after Mr. Maier complained on December 5, 2013. Defendant Frink responded to Mr. Maier's January 15, 2014 grievance appeal by stating that the medical department would look at the hearing aid, but there is a factual dispute regarding whether that was actually done. A supervisor may be found liable "for a subordinate's constitutional violations if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Maxwell v. Cnty. of San Diego*, 708 F.3d 1075, 1086 (9th Cir. 2013). Taking the facts in the light most favorable to Mr. Maier (as the Court must), he complained that he could not hear in December 2013 and filed two grievance appeals with Defendant Frink, putting him on notice of the situation, and there is an issue of fact regarding whether Defendants did anything to assist Mr. Maier.

On these facts, summary judgment is inappropriate. *See Gilmore v. Hodges*, 738 F.3d 266, 275 (11th Cir. 2013) (finding "the ability to hear is a basic human need materially affecting daily activity and a substantial hearing impairment plainly requires medical treatment by a physician"); *see also Cooper v. Johnson*,

255 Fed.Appx. 891, 892 (5th Cir. 2007) (unpublished) (vacating district court's dismissal of prisoner's complaint as frivolous because prisoner's allegations that officials refused to provide him with a hearing aid were "sufficient to raise a nonfrivolous issue regarding whether the provision of a hearing aid is a serious medical need and whether the respondents were deliberately indifferent to this need"); *Wheeler v. Butler*, 209 Fed.Appx. 14, 15 (2nd Cir. 2006) (unpublished) (vacating district court's grant of summary judgment and remanding for further proceedings because "the District Court erred in failing to consider whether the deprivation of Wheeler's hearing aids could, in and of itself, amount to cruel and unusual punishment"); *Large v. Wash. Cnty. Det. Ctr.*, 915 F.2d 1564 (4th Cir.1990) (table) (unpublished) (remanding to district court to consider the deliberate indifference claim based on defendant's failure to provide plaintiff with a hearing aid, noting that although there was "no specific authority dealing with the refusal to provide hearing aids as a possible eighth amendment violation, there is ample authority recognizing that the failure to provide comparable basic corrective/medical devices may amount to deliberate indifference to a serious medical need"); *Hicks v. Keller*, 2012 WL 1414935, at *4 (D.Colo. Apr. 24, 2012) ("Plaintiff's allegations of intentional deprivation of his hearing-aid, a necessary medical devi[c]e, sufficiently state a claim that Defendant Nelson was deliberately

indifferent to Plaintiff's serious medical needs.").

### C.  Defendant Rost's Motion for Summary Judgment

To state a claim for liability under 42 U.S.C. § 1983, "a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir.2012) (quotation marks and citation omitted).  "[T]he under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (quotation marks and citations omitted); *see also Caviness v. Horizon Cmty. Learning Ctr., Inc.*, 590 F.3d 806, 812 (9th Cir. 2010).

A private individual may, under certain circumstances, be considered to be acting under color of state law.  In considering whether a defendant may fairly be said to be a state actor, the Ninth Circuit recognizes "at least four different criteria, or tests, used to identify state action:  (1) public function; (2) joint action; (3) governmental compulsion or coercion; and (4) governmental nexus." *Kirtley v. Rainey*, 326 F.3d 1088, 1092 (9th Cir. 2003) (quotation marks and citations

omitted).[2]

The Ninth Circuit has described the public function test as follows:

> Under the public function test, when private individuals or groups are endowed by the State with powers or functions governmental in nature, they become agencies or instrumentalities of the State and subject to its constitutional limitations. The public function test is satisfied only on a showing that the function at issue is both traditionally and exclusively governmental.

*Florer v. Congregation Pidyon Shevuyim, N.A.*, 639 F.3d 916, 924 (9th Cir. 2011) (quotation marks and citations omitted).  Therefore, a private party is considered a state actor under the public function test if the plaintiff shows that the private party used powers "traditionally the exclusive prerogative of the State." *Rendell-Baker v. Kohn*, 457 U.S. 830, 842 (1982).  In *West v. Atkins*, 487 U.S. 42 (1988), the Supreme Court analyzed whether a doctor under contract with the state to provide medical services at a state prison hospital was a "state actor."  The Supreme Court specifically held "that the provision of medical services to prison inmates is traditionally the exclusive prerogative of the state." *West*, 487 U.S. at 55-56.  As set forth in *Estelle v. Gamble*, "[a]n inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met."

---

[2]  Defendant Rost cited an Indiana district court case regarding the exceptions to the rule that private conduct does not generally constitute governmental action. Defendant Rost did not discuss the public function exception in his brief in support of his motion for summary judgment.

*Estelle,* 429 U.S. 97, 103 (1976).  As the Supreme Court explained more fully in

*West*:

> It is only those physicians authorized by the State to whom the inmate
> may turn.  Under state law, the only medical care . . . West could
> receive . . . was that provided by the State.  If the Doctor . . . misused
> his power by demonstrating deliberate indifference to the plaintiff's
> serious medical needs, the resultant deprivation was caused, in the
> sense relevant for state-action inquiry, by the State's exercise of its
> right to punish the plaintiff by incarceration and to deny him a venue
> independent of the State to obtain needed medical care.

*West*, 487 U.S. at 56.

Defendant Rost effectively engaged in a public function by providing

medical care to Mr. Maier, a person involuntarily in the custody of the State of

Montana, at Crossroads, a facility that contracts with the State of Montana to

incarcerate prisoners.

Defendant Rost argues that CCA contracts with Marias Healthcare to

provide the medical care at Crossroads Correctional Center in Shelby, Montana,

and Defendant Rost is employed by Marias Healthcare.  He argues he is not an

employee of the State of Montana, he does not report to the State of Montana, and

the State does not oversee the medical care that he provides to inmates at

Crossroads.  He contends he is several steps removed from working for or being

clothed with the authority of the State of Montana and therefore is not a state actor.

(Doc. 50 at 6.)

In *West*, however, the Supreme Court did not rely on the particular contractual arrangement that the physician had with the state, but instead emphasized the function of the physician.

> It is the physician's function within the state system, not the precise terms of his employment, that determines whether his actions can fairly be attributed to the State. Whether a physician is on the state payroll or is paid by contract, the dispositive issue concerns the relationship among the State, the physician, and the prisoner. Contracting out prison medical care does not relieve the State of its constitutional duty to provide adequate medical treatment to those in its custody, and it does not deprive the State's prisoners of the means to vindicate their Eighth Amendment rights. The State bore an affirmative obligation to provide adequate medical care to West; the State delegated that function to respondent Atkins; and respondent voluntarily assumed that obligation by contract.

487 U.S. at 55–56 (footnote omitted).

Courts have consistently held that private physicians and medical entities may be considered state actors for purposes of Section 1983 liability when a state has delegated its obligation to provide medical care for inmates to those private entities, even in the absence of a contract. *See Conner v. Donnelly*, 42 F.3d 220, 225 (4th Cir. 1994) (private physicians that treat prisoners act under color of state law for purposes of Section 1983 liability "[r]egardless of the physician's employment relationship with the state."); *Carl v. Muskegon Cnty.*, 763 F.3d 592,

595–98 (6th Cir. 2014) (noting that "[a] state may not escape § 1983 liability by contracting out or delegating its obligation to provide medical care to inmates" and holding that a finding that a private physician did not act under color of state law would "incentivize the state to contract out, piece by piece, features of its prison healthcare system") (emphasis added); *McKenzie v. Jorizzo*, 2015 WL 127826, at *4 (D.Or. Jan. 6, 2015) ("[C]ourts have held that private physicians and medical entities are state actors for purposes of § 1983, when a state has delegated its obligation to provide medical care to inmates.").

Defendant Rost cited several district court cases in which courts held that a medical provider who provides medical care to prisoners without a direct contractual relationship with the state does not act under color of state law with respect to a Section 1983 claim. *See Lowe v. McGuinness*, 2012 U.S. Dist. LEXIS 42127, at *11 (E.D. Cal. Mar. 26, 2012) (physician who treated prisoners at hospitals that had contracts with state not a state actor); *Sanchez v. Smith*, 2006 U.S. Dist. LEXIS 37831, at *5 (W.D. Wash. May 24, 2006), adopted by summary judgment, 2006 U.S. Dist. LEXIS 44760 (W.D. Wash. June 20, 2006) (private doctor not acting under color of state law when he accepted referral from state department of corrections); *Nunez v. Horn*, 72 F. Supp. 2d 24, 27 (N.D.N.Y 1999) (physician not employed by Bureau of Prisons or under contract with state not

acting under color of state law when treating a prisoner).

None of the district court cases cited by Defendant Rost are binding on this Court, and they are distinguishable from this case. In the *Lowe* case, the defendant doctor was not aware that the hospital where he had privileges had entered a contract with the state to provide neurosurgical care to inmates. He only treated the plaintiff at the hospital where he had privileges and never treated the plaintiff at the prison. In the cases cited by Defendant Rost, the physicians provided medical care to inmates in a private medical setting.[3] In contrast, Defendant Rost provided medical services within the confines of a state contracted correctional facility where "the nonmedical functions of prison life inevitably influence the nature, timing, and form of medical care provided to inmates such as [the plaintiff]." *West*, 487 U.S. at 57 n. 15.

Defendant Rost is not a state employee and did not, as an individual, have a direct contract with the State to provide medical services. The lack of a contractual relationship between Defendant Rost and the State, however, is not dispositive of the state actor issue herein. As set forth above, it is the physician's function that

---

[3] It is not absolutely clear whether the Defendant in the Nunez case performed any services at Ray Brook Federal Correctional Facility, but the surgery at issue was performed at Alice Hyde Hospital in Malone, New York. *Nunes*, 72 F. Supp. 2d at 25-26.

determines whether his actions can be fairly attributed to the state. *West*, 487 U.S. at 55–56. Defendant Rost was employed by Marias, who contracted with CCA to provide medical services to inmates at Crossroads. Defendant Rost's contract with Marias clearly provides that he was employed to provide services at "Crossroads Correctional Facility's clinic (prison)." (Doc. 47-2 at 1.) "[C]ontracting out prison medical care does not relieve the State of its constitutional duty to provide adequate medical treatment to those in its custody, and it does not deprive the State's prisoners of the means to vindicate their Eighth Amendment rights." *West*, 487 U.S. at 55-56. In this case, the State of Montana contracted with CCA, who contracted with Marias, who contracted with Defendant Rost, to provide medical services to state inmates. Thus, there was a contractual relationship between Defendant Rost and the State, albeit an indirect one.

Defendant Rost's motion to dismiss Plaintiff's Section 1983 claim on the basis that Defendant Rost was not acting under color of state law should be denied.

In response to Mr. Maier's Motion for Summary Judgment, Defendant Rost argues that he and others repeatedly and appropriately responded to Mr. Maier's problems with his hearing aid. (Doc. 45 at 11.) As set forth above in the analysis of Defendant Frink's Motion for Summary Judgment, there is a genuine issue of material fact regarding whether Mr. Maier's hearing aid was sent out for repair in

January 2014.  If it was not, as Mr. Maier argues, Defendant Rost did not assist an inmate with a hearing problem and may have lied to him about the status of his hearing aid.  There are genuine issues of material fact regarding whether Defendant Rost was deliberately indifferent to Mr. Maier's hearing needs.

### D.  Mr. Maier's Motion for Summary Judgment

For the reasons set forth above, the undersigned finds that there is a genuine issue of disputed fact regarding whether Defendants were deliberately indifferent to Mr. Maier's medical needs after he complained in December 2013 regarding his hearing issues.  For those same reasons, the undersigned finds that Mr. Maier has not met his burden of showing that there are no genuine issues of material fact.  Mr. Maier's motion for summary judgment should be denied.

Based upon the foregoing, the Court issues the following:

### RECOMMENDATIONS

1.  Mr. Maier's Motion for Summary Judgment (Doc. 40) should be **DENIED**.

2.  Defendant Rost's Motion for Summary Judgment (Doc. 49) should be **DENIED**.

3.  Defendant Frink's Motion for Summary Judgment (Doc. 57) should be **DENIED**.

**NOTICE OF RIGHT TO OBJECT TO FINDINGS &
RECOMMENDATIONS AND CONSEQUENCES OF FAILURE TO OBJECT**

The parties may file objections to these Findings and Recommendations within fourteen (14) days after service (mailing) hereof.[4]  28 U.S.C. § 636.  Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

This order is not immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to Fed.R.App.P. 4(a) should not be filed until entry of the District Court's final judgment.

DATED this 12th day of February, 2016.

 /s John Johnston            
John Johnston
United States Magistrate Judge

---

[4]  As this deadline allows a party to act after the Findings and Recommendations is "served," it falls under Fed.R.Civ.P. 6(d).  Therefore, three (3) days are added after the period would otherwise expire.